STEVENS G. RUSSELL

*v.*

THE CHICAGO TRUST AND SAVINGS BANK.

*Filed at Ottawa November 24, 1891.*

1. CREDITOR'S BILL—*must be preceded by judgment, and execution returned unsatisfied.* It is the uniform doctrine of this court that a creditor who seeks by his bill to reach the equitable estate of his debtor which can not be reached at law, must first recover a judgment at law and have execution returned unsatisfied, to give jurisdiction to a court of equity, and the allegation of the issue and return of execution must be sustained by proof, if not admitted.

2. SAME—*failure to obtain judgment not remedied by consolidation.* The failure to sustain the allegation of the issue, and return of an execution unsatisfied, by proof, is not remedied by the consolidation of the bill with another of the same character. Notwithstanding such consolidation the rights and equities of the two complainants are several, and the title of each to relief must depend upon the allegations of his own bill, and the proofs adduced in support thereof.

3. SAME—*extent and purpose of jurisdiction—second creditor's bill—preference of creditors.* A creditor's bill filed by a particular creditor for the purpose of enforcing the collection of his own judgment, and not one in behalf of creditors generally, gives the court jurisdiction of the equitable assets of the judgment debtor for that particular purpose, and does not necessarily involve a complete and final distribution of such assets among all the creditors. In such case, the custody of the fund presents no obstacle to another creditor obtaining a lien subordinate to that of the complainant in the bill already filed, but superior to that of all other creditors, by exhausting his remedy at law and filing a second creditor's bill.

4. The better rule is, to give to each of the complainants in several successive creditors' bills against the same defendant, priority over all creditors whose debts have not been reduced to judgments, and priority among themselves in the order of time of the filing of their respective bills.

5. TRUST FUNDS—*equity jurisdiction exclusive—preference of creditors.* Where a court of equity takes into its custody a fund, and especially a trust fund, with a view to its complete administration among the various parties entitled thereto, its jurisdiction is necessarily exclusive, and it will administer the estate or fund upon the maxim that equity is equality, and no creditor can pursue a legal remedy in such a way as to obtain for himself a preference over other creditors.

6.  But when a court of equity takes jurisdiction of a fund, not for the purpose of complete administration and distribution to all parties having an interest therein, but only for the purpose of affording a specific remedy to a particular claimant, a different rule must prevail.

7.  CHANCERY PRACTICE—*consolidation of creditors' bills—when proper.* Where two judgment creditors are seeking, by creditors' bills, to reach and subject to the satisfaction of their respective judgments the equitable assets of their judgment debtor, and are thus in pursuit of the same fund, and each complainant claims priority, it is not only proper, but is highly expedient, that the two bills should be consolidated, and the rights of all the parties be determined in the same proceeding.

8.  Where a second creditor's bill against the same debtor is not content with a second lien, and contests the right of the creditor in the first bill to a first lien by attacking the good faith of the complainant therein and his judgment, the issues thus raised will bring the two proceedings into such relations to each other as to make it difficult to prosecute them separately, and to render a decree in one case without determining the right of the plaintiff in the other. In such case there is no more impropriety in the litigation of such adverse rights in the same proceeding than there is where any adverse demand is presented by cross-bill.

9.  But when the complainant in the second creditor's bill is pursuing his remedy in subordination to the prior lien acquired by the complainant in the first bill, there is no necessity of a consolidation, as the remedy sought by one is entirely consistent with that sought by the other. It may be that under such circumstances a consolidation of the two suits against the objection of any party to the litigation might be improper.

10. SAME—*as to consolidation—different parties—differs from practice at law.* It is no objection to the consolidation of causes in chancery that the parties to the two bills are not identically the same, but it will be proper if the two bills, in respect of their subject matter, are germane to each other, as, when the object of both bills is to obtain a first and prior lien on the same fund. A very different rule doubtless applies to the consolidation of suits at law.

11. PRACTICE—*time to object—consolidation of causes.* A person who becomes a party to a litigation after the consolidation of two bills in equity, in each of which the complainant seeks to have a fund applied in satisfaction of his judgment to the exclusion of the other, will not have the right to question the propriety of the order of consolidation, especially when no objection is made in the court below, and he is not shown to be prejudiced thereby in any of his rights. The objection comes too late for the first time in the Appellate Court.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. Tuley, Judge, presiding.

On the 26th day of July, 1886, James O. Walker filed his creditor's bill against Almon D. Ellis, alleging the recovery against said Ellis, on said 26th day of July, 1886, of a judgment at law for $2231.14, and costs, the issuing of an execution on said judgment and the return thereof on the same day wholly unsatisfied. The bill further alleged that Ellis had, for a considerable time, been engaged, in Chicago, in the business of selling boots and shoes on commission, and that in the course of said business, divers persons in this and other States had become indebted to him in large amounts and that there were then debts due him largely exceeding the amount of said judgment, most of his debtors being non-residents of the State; that he also had other assets which ought equitably to be applied to the payment of said judgment. The bill prayed for discovery, for the appointment of a receiver, and for the satisfaction of said judgment out of the estate of said Ellis. On the same day a receiver was appointed of all the estate of said Ellis, except property exempt by law from execution, and certain trust funds.

On the 31st day of July, 1886, the Chicago Trust and Savings Bank also filed its creditor's bill against Ellis, alleging that on the 27th day of July, 1886, it recovered a judgment at law against him for $7060, and costs, and that on the day following an execution was issued on said judgment to the Sheriff of Cook county, which was returned by said sheriff, on the 31st day of July, 1886, wholly unsatisfied; that said Ellis had assets, consisting of debts due him from divers parties, to a large amount, and other property which belonged to him or in which he had some interest. Said bill also alleged that on the 26th day of July, 1886, Ellis, without consideration as the complainant was informed and believed, confessed a judgment

in the Circuit Court of Cook county, in favor of said Walker, for $2241.13; that Walker had theretofore been an employe of said Ellis, and as such had had free access to Ellis' books of account, and knew the names and residences of persons within the State owing Ellis large sums of money; that Ellis and Walker, combining and confederating together for the fraudulent purpose of hindering and delaying the complainant, and other creditors of Ellis, had caused an execution to be issued on said judgment and to be at once on the same day returned unsatisfied, and immediately caused a creditor's bill to be filed against Ellis, and a receiver appointed of all the effects and property of said Ellis; that they now pretend that the complainant's judgment was not a lien upon any real estate of said Ellis, but that said receiver holds the title to all of Ellis' real and personal property, and that the complainant is remediless in the premises, and must pro-rate with all the other creditors of Ellis; that by reason of said fraudulent and collusive conduct on the part of Walker and Ellis, Walker's creditor's bill ought to be dismissed out of court, and Walker enjoined from prosecuting the same, and that the complainant's judgment should be paid out of the first moneys received from the assets of said Ellis. Said bill prayed for discovery, for an injunction, and for a receiver; also that Walker's creditor's bill be dismissed for want of equity, and that the assets of said Ellis be applied to the satisfaction of the complainant's said judgment.

On the 30th day of September, 1886, it appearing that the receiver appointed under Walker's bill, had in his hands the sum of $1800, on petition of Walker, he was ordered by the court to pay that sum over in part satisfaction of Walker's judgment. Afterward, on the 2d day of October, 1886, on motion of the Chicago Trust and Savings Bank, the receiver appointed under the Walker bill was appointed receiver under its bill, and at the same time and by the same order, the two causes were, on motion of the solicitors for the bank consoli-

dated, but without prejudice to the rights of Walker, either to priority or otherwise.

On January 24, 1887, Walker filed his petition representing that since the filing of the original bill and the appointment of the receiver, Stevens G. Russell had acquired or claimed to have acquired some interest in the subject matter of the suit, which required his presence in court as a party thereto, and praying leave to file a supplemental bill for the purpose of making said Russell a party defendant, and such leave being granted a supplemental bill was filed by Walker for that purpose. Stevens thereupon answered the original and supplemental bills, and filed his cross-bill, alleging that on the 26th day of October, 1886, he recovered a judgment in the Circuit Court of Cook county against said Ellis for the sum of $2013.91 and costs; that on the same day an execution was issued on said judgment to the Sheriff of Cook county, which execution was, on the 23d day of November, 1886, duly returned by said sheriff wholly unsatisfied; that said Ellis is wholly insolvent, his entire estate, both real and personal, being in the hands of the receiver appointed under Walker's bill; that at the time the receiver was appointed, Ellis had debts due him largely in excess of the Walker judgment and the judgment in favor of said complainant in the cross-bill, and that the appointment of a receiver was still necessary for the security and protection of said judgments, and that said receiver or some one in his place and stead, should continue to act as receiver; that Walker claimed in some manner, that his judgment ought to be satisfied in full, before that of the complainant in the cross-bill, but that such claim was unfounded; that since the appointment of the receiver, the Chicago Trust and Savings Bank, had filed a creditor's bill, which had been consolidated with that of Walker, and that the same receiver had been appointed under the bill of said bank; that said bank claimed some rights in the subject matter of the suit hostile to the complainant in the cross-bill, but that such claim was ground-

less.    Said cross-bill prayed that the order appointing the receiver be extended and the receiver be continued in office as receiver for said complainant; that Ellis be decreed to pay the amount of said complainant's judgment; that any of the property and effects of said Ellis collected by the receiver be applied to the satisfaction of said judgment after such part of Walker's judgment as the court should deem him entitled to as against said complainant, should be paid, and also a general prayer for relief.

Said cross-bill was answered by said bank, and a replication to said answer was duly filed.    Ellis and Walker were defaulted for want of answers.    Subsequently Walker's supplemental bill was dismissed on his motion; and also on motion, but whose motion does not appear, it was ordered that the cross-bill of Russell stand as an intervening petition.    A large number of other creditors whose debts had not been reduced to judgment also appeared in said suit and filed their intervening petitions and exhibited and proved their respective claims.

Said consolidated cause afterward came on to be heard on pleadings and proofs, and at such hearing a decree was rendered finding that said Walker was entitled to a decree for the balance of his judgment amounting to $560.89 to be first paid from moneys in the hands of the receiver; that the Chicago Trust and Savings Bank was entitled to a decree for the amount of its judgment and interest, amounting to $8551.60, to be paid by the receiver, from moneys in his hands, next after said Walker; that intervening petitioner Russell was entitled to no lien or priority by virtue of his judgment and intervening petition over the contract creditors who had proved their claims, but was only entitled to share equally with said contract creditors in the moneys remaining in the hands of the receiver, after said prior judgments had been made.    The receiver was thereupon ordered to pay, first, the balance due on the Walker judgment; second, the amount of the judgment

in favor of said bank, and, thereby, if after making said payments, any moneys remained in his hands, he was directed to distribute the same *pro rata* among the intervening creditors who had proved their claims. On appeal by Russell to the Appellate Court, said decree was affirmed, and by a further appeal he now brings the record to this court and assigns for error the judgment of the Appellate Court.

Mr. J. S. McClure, and Mr. Thomas J. Sutherland, for the appellant:

The averment of execution, returned *nulla bona* in the bank's bill, is jurisdictional, and not being sustained by proof, it left the case as if no averment had ever been made, and took the fact out of the case. *Railroad Co.* v. *St. Anne,* 101 Ill. 154; *Dormueil* v. *Ward,* 108 id. 218; *Durand* v. *Gray,* 129 id. 17.

It was error for the court to order the consolidation of the first two cases by its order of October 2, 1886, and to try them and enter the decree in them as consolidated cases. *Miles* v. *Danforth,* 37 Ill. 161; *Thielman* v. *Carr,* 75 id. 389; *Logan* v. *Bank,* 13 Ga. 201; *Ames* v. *Chadwick,* L. R. 4 Ch. Div. 872; *Reed's Lessors* v. *Dodson,* 1 Overton, 396; *Groff* v. *Musser,* 3 ·S. & R. 263; *Harris* v. *Sweetland,* 48 Mich. 112; *Hartman* v. *Spiers,* 87 N. C. 30; *Beach* v. *Woodward,* 5 W. Va. 232; *Bones* v. *Bank,* 67 Ala. 341; *Thompson* v. *Shepard,* 9 Johns. 262; *Wallace* v. *Eldridge,* 27 Cal. 500; *Dunn* v. *Mason,* 7 Hill, 155; *Lewis* v. *Daniel,* 45 Ga. 125.

After the appointment of the receiver on July 26, 1886, every creditor of Ellis, except Walker, was on an equal footing, and they could subsequently get no advantage over each other by virtue of any legal proceedings outside of that case. The estate was in *custodia legis*. *Roseboom* v. *Whittaker,* 132 Ill. 82; *Rappleye* v. *Bank,* 93 id. 400; *Talcott* v. *Wire Co.* 131 id. 252; *Jackson* v. *Lahee,* 114 id. 287.

Messrs. Fuller & Fyffe, for the appellee:

The rights of appellant, if any, are subject to the right of appellee to a priority after satisfaction of the Walker judgment.  *Corning* v. *White*, 2 Paige, 567; *Storm* v. *Waddell*, 2 Sandf. Ch. 494; *Bank* v. *Gage*, 93 Ill. 172; *King* v. *Goodwin*, 130 id. 102; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *Bennett* v. *Leslie*, 6 Paige, 445; *Safford* v. *Douglas*, 4 Edw. Ch. 537; *Miers* v. *Turnpike Co.* 13 Ohio, 197.

In any proceeding in the nature of a creditor's bill a court of equity can give no relief to simple contract creditors. How, then, can they claim to have priority of a creditor who has reduced his claim to judgment, issued execution, exhausted his remedy at law, and then has pursued the debtor into a court of equity by instituting a part of these very proceedings in which appellant intervened.  *Dormueil* v. *Ward*, 108 Ill. 216; *Scripps* v. *King*, 103 id. 469; *Smith* v. *Railroad Co.* 99 U. S. 398; *Schufeldt* v. *Boehrn*, 96 Ill. 560; *Parmelee* v. *Egan*, 7 Paige, 610; *Gore* v. *Kramer*, 117 Ill. 176.

Appellant can not question the order of consolidation, for the reason that he did not become a party until after the entry of this order and, because he did not make any objection thereto in the court below.  *Taylor* v. *Hubbell*, 2 J. & S. 224; *Papin* v. *Goodrich*, 103 Ill. 86; *Brainard* v. *Hudson*, id. 218; *Land Co.* v. *Peck*, 112 id. 408; *Franklin* v. *Osgood*, 14 Johns. 527; *Wood* v. *Young*, 5 Wend. 620; *Gelston* v. *Hoyt*, 13 Johns. 561.

The order of consolidation was proper.  *Mining Co.* v. *Allen*, 95 Ill. 288.

The recovery of the judgment, and the appointment of the receiver in the Walker case prior to the bank's judgment, constituted all the facts that were requisite to establish appellee's right to come into a court of equity.  *McDowell* v. *Cochran*, 11 Ill. 31; *Bay* v. *Cook*, 31 id. 336; *Steere* v. *Hoagland*, 39 id. 264; *Postlewaite* v. *Howes*, 3 Clarke, 565; *Turner* v. *Adams*, 46 Mo. 95.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

It is contended by the appellant that it was error for the Circuit Court to order the consolidation of the creditor's bill filed by the Chicago Trust and Savings Bank with the bill previously filed by Walker, and in hearing both bills and entering a decree thereon as consolidated cases. Assuming for the moment that the appellant is in a position to raise that question, we are unable to see that the order consolidating said causes was in any respect erroneous. Both complainants were seeking to reach and subject to the satisfaction of their respective judgments the equitable assets of their judgment debtor, and being thus in pursuit of the same fund, it was not only proper but highly expedient that their rights should be litigated and determined in the same proceeding.

If the bank had been content to file its bill and pursue its remedy in subordination to the prior lien acquired by Walker, there would certainly have been no necessity for the consolidation of the two proceedings, as the remedy sought by one would have been entirely consistent with that sought by the other, and they might therefore, without any impropriety, have been made the subjects of two independent decrees. It may be that, under such circumstances, a consolidation of the two bills, against the objection of any party to the litigation, would have been improper.

The bank, however, at the time it filed its bill, was not content with a second lien, but saw fit to contest with Walker his right to a first lien, by attacking the good faith of Walker's bill, and of the judgment which that bill was filed to collect. The issues thus raised brought the two proceedings into such relations with each other, as to make it difficult to prosecute them separately. The decree in each was made to depend upon the terms of the decree in the other, and neither suit could be finally and satisfactorily determined, so long as the other remained undisposed of. There was no more impro-

priety in the litigation of these adverse rights in the same proceeding, than there is when any adverse claimant intervenes, and on being made a party, files a cross-bill, setting up and litigating the rights claimed by him in the same proceeding.

It is no objection to the consolidation that the parties to the two bills were not identically the same.   One bill was brought by Walker against Ellis and the other by the bank against Walker and Ellis.   The subject matter of the two bills, however, were entirely germane to each other, the object of each being to obtain a first lien upon the same fund, for the satisfaction of its own judgment.   A very different rule would doubtless apply to consolidation of suits at law, for these suits can not properly be consolidated unless the adverse parties in each are identical.   But no such rule applies in chancery where the court has power to adapt and mould its relief to the particular circumstances of each party litigant however he may be related to the subject matter of the litigation.

But the appellant can not be heard in this court to question the propriety of the order of consolidation for three reasons. 1. because he was not a party to the litigation at the time said order was entered; 2. because he made no objection to said order in the Circuit Court, and, 3. because said order is not shown to have been in any degree prejudicial to his rights.

The order of consolidation was entered October 2, 1886, and no objection to it was then or has since been interposed by any person who was then a party to the litigation.   Appellant was not made a party until January 24, 1887, when he was brought into the consolidated case by Walker's supplemental bill.   On the following day he filed his answer and cross-bill. He certainly had then no right, as a party, to insist upon having the litigation proceed in the form in which it was originally commenced, as he had no connection with it except in its consolidated form.

But even if he had a right to object he did not do so.   In his cross-bill he assailed the equities claimed by both Walker and

the bank, but made no complaint that, by reason of the order of consolidation, those equities were being liquidated in the same proceeding. From the filing of the cross-bill down to the hearing and decree, no objection was heard from him in relation to the form in which the litigation was being carried on, and it was only in the Appellate Court that the point seems first to have been made that the order of consolidation was erroneous. Under these circumstances the objection came too late.

Nor is it shown that the appellant has been prejudiced by said order. The substantial objection interposed by him to the decree is that it gives the judgment in favor of the bank priority over his claim, and we are unable to see how such priority resulted in the least from the fact that the bills of Walker and the bank were litigated together. If the suit by the bank had been litigated alone and separately, all the facts affecting the right of the bank to have its judgment paid in preference to the claim of the appellant and the general creditors would have appeared in precisely the same way and have necessitated the same decree.

The appellant's next contention is that the decree, so far as it gives the bank a preference over any of the creditors of Ellis other than Walker, the complainant in the first creditor's bill, is erroneous. This contention proceeds upon the theory that by the filing of that bill and the appointment of a receiver thereunder the entire estate of Ellis was taken into the custody of the law by a court whose fundamental maxim is that equality is equity, and therefore that all the creditors of Ellis, with the exception of Walker, were placed on an equal footing, so that no one could subsequently obtain a preference over the others by any legal proceedings outside of that case. The rule here contended for undoubtedly applies to cases where courts of equity take into their custody funds, and especially trust funds, with a view to their complete administration and distribution among the various parties entitled thereto. Such

was the case in *Roseboom* v. *Whittaker*, 132 Ill. 81. That was a bill by certain stockholders of a corporation praying to have certain judgments by confession against the corporation and in favor of certain of its officers set aside as fraudulent, and for the appointment of a receiver, and the distribution of the assets of the corporation, which was then insolvent, to the parties entitled thereto. We there held that after a court of equity had taken possession of the estate of such insolvent corporation, such estate was so far in the custody of the law, that no creditor could by subsequent proceedings by creditor's bill, establish such a lien upon the assets of the corporation as to give him a preference over other creditors. We there said: "After the aid of a court of equity has been invoked and that court has taken the assets of the insolvent into its hands, its jurisdiction becomes necessarily exclusive, and it will proceed, in administering the insolvent estate, upon the maxim that equality is equity. After the jurisdiction has attached, ordinarily, no creditor can pursue a legal remedy, at least, in such way as to obtain for himself a preference."

Where, however, a court of equity takes jurisdiction of a fund, not for the purpose of complete administration and distribution to all parties having an interest therein, but only for the purpose of affording a specific remedy to a particular claimant, a different rule must prevail. A creditor's bill, filed by a particular creditor for the purpose of enforcing the collection of his own judgment, and not on behalf of creditors generally, gives the court jurisdiction of the equitable assets of the judgment debtor for that particular purpose, and does not necessarily involve a complete and final distribution of said assets among all the creditors. In such case, therefore, the custody of the fund by the court would seem to present no obstacle in the way of another creditor's obtaining a lien, subordinate to that of the bill already filed but superior to all other creditors, by exhausting his remedy at law in filing a second creditor's bill. We are not therefore disposed to hold that the

race of diligence between creditors which courts of equity will recognize and reward, must end when the first judgment creditor files his creditor's bill and secures the appointment of a receiver. The better rule and the one more in accordance with established principles of equity is, to give to each of complainants in several successive creditors' bills against the same defendant, priority over all creditors whose debts have not been reduced to judgment, and priority among themselves in the order of the time of the filing of their respective bills. In New York where the statute in relation to creditors' bills is substantially identical with ours, this has long been the settled rule. *Storm* v. *Waddell*, 2 Sanf. Ch. 494; *Corning* v. *White*, 2 Paige, 567; *Burrell* v. *Leslie*, 6 id. 445; *Safford* v. *Douglas*, 4 Edw. Ch. 538. We are of the opinion then that the bank, by filing its bill, obtained a lien on the fund in the hands of the receiver, subordinate to that already acquired by Walker, but one which gave the bank priority over the appellant and over all the other creditors of the same debtor.

This conclusion, however, involves of course the supposition that the creditor's bill filed by the bank was sustained by the evidence adduced at the hearing. However sufficient the bill may be to entitle the complainant therein to relief, the decree based thereon, to be sustained, must be supported by the evidence. By its bill the bank alleged, as it was compelled to allege in order to obtain any footing in a court of equity, that it had exhausted its legal remedies by obtaining judgment, suing out execution, having the sheriff make proper efforts to collect the judgment by that means, and such efforts proving unavailing, by having him return the execution unsatisfied. This is required by the provisions of section 49, chapter 22, of the Revised Statutes, and under that statute it has been the uniform doctrine of this court, that a creditor who seeks by his bill to reach equitable estate of his debtor, which can not be reached at law, must first recover judgment at law and have execution returned unsatisfied, to give jurisdiction to

equity.   *Dormueil* v. *Ward,* 108 Ill. 216; *Heckling* v. *Wilson,* 104 id. 54; *Scripps* v. *King,* 103 id. 469; *Mann* v. *Ruby,* 102 id. 348; *C. D. & V. R. R. Co.* v. *Town of St. Anne,* 101 id. 151; *Moshier* v. *Meek,* 80 id. 79; *Dewey* v. *Eckert,* 62 id. 218; *Mugge* v. *Ewing,* 54 id. 236; *McConnel* v. *Dickson,* 43 id. 99; *Steere* v. *Hoagland,* 39 id. 264; *Bay* v. *Cook,* 31 id. 336; *Bigelow* v. *Andress,* id. 322; *Greenway* v. *Thomas,* 14 id. 271; *Ishmael* v. *Parker,* 13 id. 324; *McDowell* v. *Cochran,* 11 id. 31; *Miller* v. *Davidson,* 3 Gilm. 518.

The allegations in the bill by the bank in relation to the issuing and return of execution are not admitted by the appellant in the pleadings, and on examination of the certificate of evidence, which purports expressly to set forth all the evidence adduced at the hearing, we fail to find any reference whatever to the issuance or return of execution.   There is absolutely no evidence in the record tending to sustain the allegations of the bill in that behalf.   This necessary proof being absent, the decree can not be sustained.

The defect of proof here pointed out is not remedied by the consolidation of this bill with the bill filed by Walker.   The rights and equities of the two complainants, notwithstanding the consolidation are several, and the title of each complainant to relief must depend upon the allegations of his own bill and the proofs adduced in support of such allegations.   There being a total failure by the bank in the respect above pointed out, to sustain the material allegations of its bill, the decree of the Circuit Court and the judgment of the Appellate Court as to it will be reversed and the cause will be remanded to the Circuit Court for further proceedings not inconsistent with this opinion, leave being given to the parties to introduce further evidence if they shall be so advised.

*Judgment reversed.*